# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

ZACHARY HARROP,

      Petitioner,

v.                         CASE NO. 2:08-CV-678
                           JUDGE MARBLEY
                           MAGISTRATE JUDGE KING

MICHAEL SHEETS, Warden,

      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The Ohio Sixth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On April 8, 2005, appellant was indicted on one count each of murder in violation of R.C. 2903.02(B), felonious assault in violation of R.C. 2903.11(A)(1), and tampering with evidence in violation of R.C. 2921.12(A)(1). The charges stemmed from an incident that took place in the early morning hours of April 1, 2005 at the residence of Joseph Heimann. Present at the residence that morning were appellant, Heimann, Roger Byrd, and a friend of Heimann.

> Byrd was asleep in the living room when he suddenly stood up and started urinating on the floor in front of appellant and Heimann. Appellant struck Byrd, grabbed him, and put him outside. After Byrd unsuccessfully tried to get back in through the front door, he entered the house through the back door. Once again, appellant grabbed Byrd and put him outside. In the process of putting Byrd outside twice and preventing him from re-entering the house, appellant hit him in the face with his fist several times and kicked him several times. After appellant threw Byrd out the second time, appellant hit him again. Byrd never got up. Appellant then dragged Byrd to the neighbor's yard next door. During the altercation, Byrd, who looked like he was asleep, never swung back, kicked back, slapped, or pushed appellant. During the altercation and in the process of being dragged out, Byrd lost his shoes, socks, pants, and underwear. He was discovered with only a shirt on by construction workers at about 9 a.m. He later perished from his injuries.
>
> In April 2006, a jury found appellant guilty of murder and tampering with evidence. He was sentenced to 15 years to life in prison on the murder charge and to a consecutive five-year prison term on the tampering with evidence charge. This appeal follows in which appellant raises two assignments of error.

*State v. Harrop*, 2006 WL 3350647 (Ohio App. 6th Dist. November 20, 2006). Petitioner filed a timely appeal, in which he asserted the following assignments of error:

> 1. Trial counsel rendered ineffective assistance of counsel, in violation of Harrop's rights under the Sixth Amendment to the U.S. Constitution.
>
> 2. The trial court erred in imposing statutory maximum and consecutive terms of imprisonment.

*Exhibit 3 to Return of Writ*. On November 20, 2006, the appellate court sustained petitioner's second assignment of error and reversed the judgment of the trial court "as to sentencing only and only with regard to appellant's sentence for tampering with evidence." *See State*

*v. Harrop, supra.* The matter was remanded for resentencing. Petitioner filed a timely appeal to the Ohio Supreme Court. He raised the following proposition of law:

> A criminal defendant is denied the effective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, when counsel fails to object to unlawful hearsay evidence, and fails to request a jury instruction regarding an inferior degree of offense which is warranted by the facts of the case.

*Exhibit 7 to Return of Writ.* On April 18, 2007, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. *State v. Harrop*, 113 Ohio St.3d 1467 (2007), *Exhibit 9 to Return of Writ.*

On July 15, 2008, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following ground:

> Trial counsel rendered ineffective assistance of counsel, in violation of the Sixth Amendment.
>
> The State did not call as a witness the pathologist who performed the autopsy on the decedent, but instead called another pathologist who "interpreted" the autopsy report at trial. Trial counsel failed to object to this violation of Mr. Harrop's Confrontation Clause rights. Further, counsel failed to request a jury instruction for voluntary manslaughter, despite the facts that the decedent and Mr. Harrop had no prior history of animosity; the incident began when decedent started to urinate on the living room rug in the house where Mr. Harrop was staying; and the fatal blows were struck only when decedent attempted to force his way back into the house through the rear entrance after having been thrown out through the front door by Mr. Harrop.

3

It is the position of the respondent that this claim is without merit. [1]

## MERITS

In his sole remaining claim for federal habeas corpus relief, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to request a jury instruction on involuntary manslaughter. The state appellate court rejected this claim as follows:

> [A]ppellant argues that his trial counsel was ineffective for failing to ... request jury instructions on voluntary manslaughter and aggravated assault.
>
> The reversal of a conviction based upon ineffective assistance of counsel requires satisfying the two-prong test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 95. First, a defendant must show that counsel's performance was deficient, that is, that counsel's performance fell below an objective level of representation. Second, the defendant must show that the deficient performance caused prejudice, depriving the defendant of a fair trial. Prejudice exists where the defendant shows that, but for counsel's errors, there is a reasonable probability that the result of the trial would have been different. *Conway* at ¶ 95, citing *State v. Bradley* (1989), 42 Ohio St .3d 136.
>
> \*\*\*
>
> Appellant ... argues that he received ineffective assistance of counsel because his trial counsel did not request jury instructions on voluntary manslaughter....

---

[1] Petitioner appears to have withdrawn his claim of ineffective assistance of counsel based on his attorney's failure to object to testimony of Dr. William Cox, a pathologist at the Franklin County Coroner's office regarding the contents of the victim's autopsy report. *See Traverse*, at 4 n.1.

... Voluntary manslaughter ... is not a lesser included offense of murder, but an inferior degree of murder. *See State v. Tyler* (1990), 50 Ohio St.3d 24. Nevertheless, as with a lesser included offense, "a defendant is entitled to an instruction on an inferior degree of the indicted offense when the evidence is such that a jury could both reasonably acquit him of the indicted offense and convict him of the inferior offense." *Id*. at 37.

The elements of voluntary manslaughter ... include the mitigating circumstance that the accused acted "while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the [accused] into using deadly force." See R.C. 2903.03(A) and 2903.12(A). For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. *State v. Rice,* Butler App. No. CA2003-01-015, 2004-Ohio-697, ¶ 34. To determine whether the provocation was reasonably sufficient to incite the use of deadly force, the trial court must consider the emotional mental state of the defendant and the conditions and circumstances that surrounded him at the time. *Id.* at ¶ 36.

Appellant asserts that he was provoked by Byrd's initial act of urinating in Heimann's living room and Byrd's repeated attempts to get back in the house after he had been physically ousted and orally informed he was not welcomed there. Even assuming that Byrd "kind of balled up his fist up" before appellant struck him the first time (as Heimann testified for the first time at trial), we decline to hold that Byrd's act of urinating in the house and his repeated attempts to get back in the house after being physically ousted and orally informed he was not welcomed would have been sufficient to arouse the passions of an ordinary person beyond control. *See id.* at ¶ 37 (declining to hold that an intoxicated victim arguing with a defendant, beginning to hit him, and pulling a knife on him were sufficient to arouse the passions of an ordinary person beyond control). Considering that Byrd looked like he was asleep during the altercation, was apparently intoxicated, never took any offensive action against appellant while being hit and kicked by appellant, and never verbally threatened

> appellant, we find that the record lacks sufficient evidence of serious provocation.
>
> Because there was no evidence that appellant's offenses were influenced by a sudden passion or a sudden fit of rage brought on by serious provocation from the victim, jury instructions on voluntary manslaughter ... were not warranted under the facts of this case. It follows, then, that to request such instructions would have been futile and inappropriate. An attorney is not ineffective for failing to make futile requests, *see State v. Kouzelos* (Apr. 16, 1992), Cuyahoga App. No. 62568, or for failing to make a request for a jury instruction which would have been denied. *See State v. Kenney* (May 10, 2000), Holmes App. No. CA93-480A. Appellant's trial counsel provided reasonable representation and did not commit any error when he did not request jury instructions on voluntary manslaughter and aggravated assault.
>
> In light of all of the foregoing, we find that appellant received effective assistance from his trial counsel. Appellant's ... assignment of error is overruled.

*State v. Harrop, supra*. The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. §2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. §2254(d) provides:

6

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States District Court for the Western District of Michigan has summarized this standard as follows:

> [A] decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." A federal habeas court may not find a state court's adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Further, the federal habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable.

*Williams v. Lavigne*, 2006 WL 2524220 (W.D. Michigan August 30, 2006), *citing Williams v. Taylor*, 529 U.S. 362 (2000). Petitioner has failed to meet this standard.

The right to counsel guaranteed by the Sixth Amendment is the right to effective

7

assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 U.S. at 687; *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.,* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.,* at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider the other. *Id*.

Petitioner contends that the state appellate court unreasonably applied *Strickland* in concluding that there was no evidence that petitioner's acts were influenced by sudden

8

passion or sudden fit of rage brought on by serious provocation from the victim such that a jury instruction on voluntary manslaughter was warranted. *Traverse,* at 4. He argues, as he did before the state appellate court, that Byrd's "drunken belligerence" and actions in urinating on the living room floor and in returning to the house after being asked to leave constituted facts sufficient to warrant a voluntary manslaughter instruction. *Id.*, at 8. Upon review of the record, this Court is not persuaded that the state appellate court's decision rejecting these arguments was unreasonable so as to warrant federal habeas corpus relief. *See Williams v. Taylor, supra.*

As discussed by the state appellate court, the trial transcript indicates in relevant part that Byrd and others went to an after hours party at 804 Peddicord, where Joe Heimann lived. *Trial Transcript,* at 19-20; 78-79. Justin Tyree fell asleep in the front room, as did Byrd. *Id.*, at 80. Tyree woke to the sound of a thud. He looked over and saw that Byrd may have fallen out of a chair where he had been sleeping. *Id.*, at 80-81. Tyree again dozed off and woke again to the sound of Heimann and petitioner yelling, "this mother fucker pissed on the floor." *Id.*, at 81.

> [T]here was more yelling and then... Zach got a hold of a gun and started pulling [Byrd] and kicking him, got him to the front door, kept hitting and kicking him.

*Id.*

> [H]e was kicking, he was pulling on him and kicking him in the face.

*Id.*, at 82. It appeared that Byrd was "passed out" as he was being beaten by petitioner. *Id.*

9

> Q. [W]hen he was getting kicked was he awake?
>
> A. No.
>
> Q. When he was getting punched was he awake?
>
> A. ... [H]e might have been. ... I couldn't tell...
>
> Q. ... Was he swinging back?
>
> A. No.
>
> Q. Was he kicking back?
>
> A. No.

*Id.*, at 82-83. Tyree heard petitioner remark, "I killed this mother fucker." *Id.*, at 84. Tyree called his cousin and left the house at approximately 6:15 a.m.. *Id.*, at 83. Heimann also testified that Byrd had fallen asleep in the chair in the living room and then stood up and started to urinate on the floor. *Id.*, at 113.

> And then um Zach was the closest one to him and... Zach was going to take him... grab him and put him outside. He kind of balled his fist up and Zach kind of defended himself (inaudible) and put him out... we put him out front... he was wanting back in and I told him you know you just peed on the floor... I don't even know you anyways... you... need to go home or something you can't stay here.... And so we closed the door.

Id., at 113-114. Byrd returned through the back door.

> And I said man, I don't want you in my house... you need to get out and you know kind of pushed him toward the back door and he was trying to fight and plead to stay and ... Zach hit him and he fell out the back door and hit his head on the concrete....

*Id.*, at 114-115. Heimann told police:

> Zach kicked him in the ribs. Justin said stop he's had enough. I said yeah stop... he's had enough. He's down so he closed the front door.... We came back in the front door to find Roger standing in my hallway. He'd came in the back door. He said get the "F" out of here. He said he wasn't leaving. Zach grabbed him. I opened the back door. Zach got him to the doorway and punched him out the door. His head hit the concrete. We walked out back. ... Roger got back up and his shoes were kicked off in process of him stumbling around the yard. Zach hit him again. He never got up again. Zach drug him over next door... [I]n the process of dragging him his pants came down. He laid him down there, went back in the house. We went to bed.

*Id.*, at 116-117. Heimann told police that he kept checking on Byrd to see if he was alive and still breathing after they left him. *Id.*, at 122.

Under Ohio law, a defendant charged with murder is entitled to a jury instruction on voluntary manslaughter when the evidence presented at trial would reasonably support an acquittal on the murder charge and a conviction on voluntary manslaughter. *State v. Shane*, 63 Ohio St.3d 630, 632 (1992).

> Ohio's voluntary manslaughter statute, R.C. 2903.03, reads:
>
> "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another.
>
> "(B) Whoever violates this section is guilty of voluntary manslaughter, an aggravated felony of the first degree."

The statute makes clear that the sudden passion or sudden fit of rage must be "brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force * * *." The question which must be answered in each case is: How much provocation is "reasonably sufficient" provocation?

An inquiry into the mitigating circumstances of provocation must be broken down into both objective and subjective components.FN1 In determining whether the provocation is reasonably sufficient to bring on sudden passion or a sudden fit of rage, an objective standard must be applied. Then, if that standard is met, the inquiry shifts to the subjective component of whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage. It is only at that point that the " * * * emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time * * * " must be considered. If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction. In that event, the objective portion of the consideration is not met, and no subsequent inquiry into the subjective portion, when the defendant's own situation would be at issue, should be conducted.

FN1. "There are four obstacles for the defendant to overcome before he can have his intentional killing reduced from murder to voluntary manslaughter: (1) There must have been a reasonable provocation. (2) The defendant must have been in fact provoked. (3) A reasonable man so provoked would not have cooled off in the interval of time between the provocation and the delivery of the fatal blow. And (4), the defendant must not in fact have cooled off during that interval." 2 LaFave & Scott, Substantive Criminal Law (1986) 255, Section 7.10.

The provocation must be reasonably sufficient to incite the defendant to use deadly force. For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her

> control.
>
> \*\*\*
>
> There are certain types of situations that have been regarded as particularly appropriate cases in which voluntary manslaughter instructions are often given when murder charges are brought. For example, assault and battery, mutual combat, illegal arrest and discovering a spouse in the act of adultery are some of the classic voluntary manslaughter situations.

*Id.*, at 634-635 (citation omitted).

For the reasons discussed by the state appellate court, this Court agrees that the trial transcript fails to support petitioner's contention that Byrd acted in a manner sufficient to provoke petitioner to use deadly force such that his attorney acted in a constitutionally unreasonable manner, or that petitioner was prejudiced thereby, in failing to request a jury instruction on voluntary manslaughter.

Petitioner's claim is without merit.

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations

made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


November 13, 2009                                      s/Norah McCann King
                                                       Norah McCann King
                                                       United States Magistrate Judge